UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILIP AND KATHY EATON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AURORA CANNABIS INC., TERRY BOOTH, STEPHEN DOBLER, GLEN IBBOTT, CAM BATTLEY, MICHAEL SINGER, and JASON DYCK<br><br>Defendants. | Case No. 1:20-cv-00274<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

## TABLE OF CONTENTS

**Page**

I.     NATURE OF THE ACTION ........................................................................................1

II.    JURISDICTION AND VENUE ................................................................................5

III.   PARTIES ...................................................................................................................5

IV.    SUBSTANTIVE ALLEGATIONS ...........................................................................7

       Background ...............................................................................................................7

       Materially False and Misleading Statements Issued During the Class Period....................8

V.     THE TRUTH BEGINS TO EMERGE .....................................................................12

VI.    PLAINTIFFS'S CLASS ACTION ALLEGATIONS ..............................................16

       COUNT I  For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
       Against All Defendants...........................................................................................19

       COUNT II  Violations of Section 20(a) of the Exchange Act Against the Individual
       Defendants ..............................................................................................................21

VII.   PRAYER FOR RELIEF ...........................................................................................22

VIII.  JURY TRIAL DEMANDED ....................................................................................23

010871-11/1216079 V1

Plaintiffs Philip and Kathy Eaton ("Plaintiffs"), by and through their counsel, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (i) regulatory filings made by Aurora Cannabis Inc. ("Aurora" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) conference calls, press releases, and other materials issued and disseminated by Aurora; (iii) analyst reports concerning Aurora; and (iv) other public information regarding Aurora.

## I.  NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Aurora Cannabis Inc. securities between October 23, 2018 and January 6, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Aurora is headquartered in Edmonton, Canada.  The Company was formerly known as Milk Capital Corp. and changed its name to Aurora Cannabis Inc. on October 2, 2014. The Company's principal strategic business lines are focused on the production, distribution and sale of cannabis and hemp products in Canada and internationally.

3.      Aurora's shares began trading on the New York Stock Exchange ("NYSE") under the ticker symbol "ACB" on October 23, 2018.  Previously the Company's shares traded publicly under the same ticker "ACB" on the Toronto Stock Exchange ("TSX"), as well as under "ACBFF" on the OTC Pink market ("OTC").  The Company's common shares on the OTC

continued to trade until market close on October 22, 2018, after which those shares began trading under the ticker symbol "ACB" on the NYSE.  The Company's common shares continue to trade on the TSX.

4.     The Company views its primary market opportunities as follows:

- **Global Medical Cannabis Market**: Production, distribution and sale of pharmaceutical grade cannabis products in countries around the world where permitted by government legislation, which includes Canada, Germany, Denmark, Italy, Poland and Australia;

- **Global Consumer Use Cannabis Market**: Production, distribution and sale of cannabis products to countries that have implemented regulated consumer use cannabis regimes, which presently only includes Canada and Uruguay; and

- **Global Hemp and Hemp-Derived Cannabidiol ("CBD") Market**: Production, distribution and sale of products including hemp or CBD derived from hemp plants.

5.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Aurora had exaggerated and/or overestimated the demand for and potential market for its consumer use cannabis products; (ii) as a result, Aurora was overproducing consumer use cannabis products, leading to construction and production inefficiencies as well as the oversupply of products to its non-warehouse and warehouse customers; (iii) Aurora was utilizing an unpermitted, proprietary form of treatment in the production process of its medical cannabis geared to obtain a longer shelf life of the flower, which violates German law mandating that companies receive special permission to distribute medical products exposed to ionizing irradiation; and (iv) all of the

foregoing was reasonably likely to have a material negative impact on the Company's financial results.

6.      The market began to learn the truth through a series of adverse disclosures beginning on November 14, 2019, when Aurora released dismal fiscal first quarter 2020 financial results for the period ending on September 30, 2019.  In particular, Aurora shocked investors when it announced wider than expected losses and that revenue had declined by 24% quarter over quarter.  As a result, the Company reported net income of $10.4 million for the quarter, compared with net income of $104.2 million for the same quarter last year, representing a 90% year over year decline.  In addition, Aurora disclosed it would be halting construction immediately at its massive Aurora Nordic 2 facility in Odense, Denmark to save approximately $80 million over the next year, and indefinitely defer completion of construction and commissioning at its flagship Aurora Sun facility in Medicine Hat, Alberta to conserve $110 million.

7.      On this news, Aurora's stock price fell $.56 per share, or over 17%, to close at $2.73 per share on November 15, 2019.

8.      Next, on November 29, 2019, *Marijuana Business Daily* reported that Germany had stopped the sale of Aurora's medical marijuana products.  According to the report, German authorities were reviewing Aurora's proprietary process, which enhances the shelf life of its products.  According to the report, until the review is completed, the products will remain unavailable to German pharmacies.

9.      On this news, Aurora's stock price fell $.17 per share, or over 6%, to close at $2.44 per share on December 2, 2019.

10.     Then, late Saturday, December 21, 2019, after an internal memo leaked, Aurora issued a press release announcing a major executive change; specifically, the abrupt departure of Aurora's Chief Corporate Officer, Defendant Cam Battley.  During his tenure at Aurora, Defendant Battley was described as the "Company's public face, often handling media interviews and answering questions from analysts about the Company's strategy."  Defendant Battley was also identified as one of the Cannabis industry's most vocal optimists, often touting the size of the potential market.  This announcement over the weekend was coupled with the disclosure that on December 17, 2019, Aurora Director Jason Dyck had sold 1,082,500 shares of Aurora, representing approximately 57% of his personal holdings in the Company.

11.     On this news, Aurora's stock price fell $.24 per share, or over 10%, to close at $2.01 per share on December 23, 2019.

12.     Finally, on January 6, 2020, the Company disclosed that it would be selling one of its largest greenhouses to raise cash.  Specifically, Aurora announced that it had put its greenhouse located in Exeter, Ontario on sale for $17 million to reduce its expenses and boost its cash balance.  The news marked the third tangible asset that Aurora had decided to either offload or put on hold over a span of less than two months.

13.     On this news, Aurora's stock price fell $.19 per share, or nearly 10%, to close at $1.83 per share on January 7, 2020.

14.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

- 4 -

## II.    JURISDICTION AND VENUE

15.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of

the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by

the SEC (17 C.F.R. § 240.10b-5).

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and

Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and

the subsequent damages took place in this judicial district.

18.     In connection with the acts, conduct and other wrongs alleged in this complaint,

Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and

the facilities of the national securities exchange.

## III.    PARTIES

19.     Plaintiffs, as set forth in the accompanying certification, incorporated by reference

herein, purchased Aurora securities during the Class Period and were economically damaged

thereby.

20.     Defendant Aurora purports to produce and distribute cannabis products.  It is

vertically integrated and horizontally diversified across various segments of the cannabis value

chain, including facility engineering and design, cannabis breeding, genetics research, production,

derivatives, high value-add product development, home cultivation, wholesale, and retail

distribution.  The Company produces various strains of dried cannabis, cannabis oil and capsules,

and topical kits.  Aurora is a Canadian corporation with its principal executive office is located at

Suite 500 – 10355 Jasper Avenue, Edmonton, Alberta, Canada.  Aurora's securities trade on the New York Stock Exchange ("NYSE") exchange under the ticker symbol "ACB."

21.     Defendant Terry Booth ("Booth") has served as the Company's Chief Executive Officer ("CEO") and a Director of the Board during the Class Period. Defendant Booth is also a founder of Aurora.

22.     Defendant Stephen Dobler ("Dobler") has served as the Company's President and a Director during the Class Period.  Defendant Dobler is a founder of Aurora.

23.     Defendant Glen Ibbott ("Ibbott") has served as the Company's Chief Financial Officer ("CFO") during the Class Period.

24.     Defendant Cam Battley ("Battley") was the Company's Chief Corporate Officer ("CCO") from early 2018 until December 20, 2019, when the Company announced Defendant Batley was stepping away from his role as Chief Corporate Officer.

25.     Defendant Michael Singer ("Singer") has served as the Company's Executive Chairman during the Class Period.

26.     Defendant Jason Dyck has served as a member of the Company's Board of Directors during the Class Period.

27.     Defendants Booth, Dobler, Ibbott, Battley, Singer and Dyck are collectively referred to herein as the "Individual Defendants."

28.     The Individual Defendants possessed the power and authority to control the contents of Aurora's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Aurora's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions

with Aurora, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

29.     Aurora is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

30.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Aurora under *respondeat superior* and agency principles.

31.     Defendant Aurora and the Individual Defendants are collectively referred to herein as "Defendants."

## IV.     SUBSTANTIVE ALLEGATIONS

### Background

32.     Aurora is headquartered in Edmonton, Canada.  The Company was formerly known as Milk Capital Corp. and changed its name to Aurora Cannabis Inc. on October 2, 2014. The Company's principal strategic business lines are focused on the production, distribution and sale of cannabis and hemp products in Canada and internationally.

33.     Aurora's shares began trading on the New York Stock Exchange ("NYSE") under the ticker symbol "ACB" on October 23, 2018.  Previously the Company's shares traded publicly under the same ticker "ACB" on the Toronto Stock Exchange ("TSX"), as well as under "ACBFF" on the OTC Pink market ("OTC").  The Company's common shares on the OTC continued to trade until market close on October 22, 2018, after which those shares began trading

010871-11/1216079 V1

under the ticker symbol "ACB" on the NYSE. The Company's common shares continue to trade on the TSX.

34.     The Company views its primary market opportunities as follows:

•     **Global Medical Cannabis Market**: Production, distribution and sale of pharmaceutical grade cannabis products in countries around the world where permitted by government legislation, which includes Canada, Germany, Denmark, Italy, Poland and Australia;

•     **Global Consumer Use Cannabis Market**: Production, distribution and sale of cannabis products to countries that have implemented regulated consumer use cannabis regimes, which presently only includes Canada and Uruguay; and

•     **Global Hemp and Hemp-Derived Cannabidiol ("CBD") Market**: Production, distribution and sale of products including hemp or CBD derived from hemp plants.

### Materially False and Misleading
### Statements Issued During the Class Period

35.     The Class Period begins on October 23, 2018, when Aurora shares began trading on the NYSE.  Prior to the Class Period, Defendants artificially inflated the trading price of Aurora stock by issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements not misleading.  For example, on October 18, 2018, Aurora issued a press release as an exhibit to Form 6-K titled "To Commence Trading On The NYSE," announcing that its common shares had been approved for listing on the NYSE, and would commence trading effective the open of markets, October 23, 2018.  In the press release, Defendant Booth touted "growing" demand for consumer cannabis and the advanced scientific research that went into its medical cannabis products.  The press release stated in pertinent part:

> "Our NYSE listing represents another important milestone that reflects our commitment to all stakeholders as we continue advancing domestic and international growth initiatives, which includes expanding our base of

global institutional and retail investors," said Terry Booth, CEO of Aurora. "*Aurora has rapidly developed into a globally mature organization with industry leading and technologically advanced production facilities available to produce at unprecedented scale to meet the growing demand for high-quality cannabis both in Canada and abroad. We are also uniquely committed to leveraging our deep knowledge base to further scientific research into medical applications of cannabis, and developing novel, higher-margin product offerings that strongly differentiate Aurora from our competition*."

. . . .

About Aurora

Headquartered in *Edmonton, Alberta, Canada* with funded capacity in excess of 500,000 kg per annum and sales and operations in 18 countries across five continents, Aurora is one of the world's largest and leading cannabis companies. Aurora is vertically integrated and horizontally diversified across every key segment of the value chain, from facility engineering and design to cannabis breeding and genetics research, cannabis and hemp production, derivatives, high value-add product development, home cultivation, wholesale and retail distribution.

Highly differentiated from its peers, Aurora has established a uniquely advanced, consistent and efficient production strategy, based on purpose-built facilities that integrate leading-edge technologies across all processes, defined by extensive automation and customization, resulting in the massive scale production of high quality product at low cost. Intended to be replicable and scalable globally, our production facilities are designed to produce cannabis of significant scale, with high quality, industry-leading yields, and low per gram production costs. *Each of Aurora's facilities is built to meet EU GMP standards, and its first production facility, the recently acquired MedReleaf Markham facility, and its wholly owned European medical cannabis distributor Aurora Deutschland, have achieved this level of certification*.

36. On November 12, 2018, the Company issued a press release entitled, "Aurora Cannabis Announces Financial Results for the First Quarter of Fiscal 2019," announcing a 260% Revenue Growth to $29.7 Million - Pro-Forma Revenues up 333% to $35.8 Million. The press release stated in pertinent part:

The Company's financial results for the first quarter of fiscal 2019 continued to show strong growth in its core cannabis businesses. Compared to the prior quarter, total cannabis revenue increased by 65%, while at the

same time Aurora was bolstering its inventory levels to continue serving multiple customer markets.

37.     On February 11, 2019, the Company issued a press release in conjunction with its second quarter fiscal year 2019 results entitled, "Aurora Cannabis Announces Financial Results for the Second Quarter of Fiscal 2019," announcing its financial and operational results for the second quarter ended December 31, 2018.  The press release stated that the Company had achieved "83% Sequential Net Revenue Growth to $54.2 Million."

38.     In addition, the Company promoted the progress it was making on its Aurora Sky facility, which would yield production efficiencies:

> *The Company anticipates that with Aurora Sky operating at full capacity, as well as continued reduction in operating costs, the cash cost to produce per gram will trend significantly lower.  Management reiterates its expectation that the sustainable long-term operating cost at its Sky Class facilities will be well below $1 per gram.*

39.     On February 15, 2019, during the Company's Q2 2019 Earnings Call, Defendant Battley emphasized the "strong market demand" for the Company's products that justified ramping up production:

> *To address the continued strong market demand from the Canadian and international medical market and the Canadian consumer market, we are ramping up production rapidly.  Currently, based on planted rooms approved by Health Canada, we are running at an annual production rate of about 120,000 kilograms or 120 million grams per year, and we expect to reach over 150,000 kilos of annual production by the end of next month based on planted and approved rooms.*

40.     During the same call, Defendant Ibbott emphasized the "very strong demand for [Aurora's] products:

> *With the rapid scale-up of our production and the related increase in product availability, the continued very strong demand for our products, our planned expansion of a derivative product portfolio of these higher-margin products and continued discipline in our operating cost, we are very comfortable in reiterating our earlier guidance of achieving positive EBITDA in our fiscal Q4, that's April to June 2019, with positive*

*operational cash flow following shortly thereafter.  We are executing well as reflected in these results and in our expectations going forward, and we are exceptionally well positioned as one of the clear leaders in the global cannabis industry.*

41.     During the same call, Defendant Booth stated:

Consumers that have chosen their products will demand those products, and that will give us an opportunity to go back to the provinces, and say, hey, you know what?  *We have an awesome demand for these particular products.  We are going to be increasing our prices*.  We're not going to continue to sell our cannabis at the same price that our competitors sell it at if it's not as much in demand.  So it's all about high-quality products will drive this market and the provinces, I believe, will be paying out for that before too long.

42.     On October 3, 2019, Aurora issued a press release entitled "Aurora Cannabis

Provides Update on Global Operations and Growth Initiatives" which provided an update on the

various Aurora facilities under construction, stating in pertinent part:

Aurora Sun and Aurora Nordic 2 Construction Update

*Aurora continues to progress construction of its 1.6 million square foot facility, Aurora Sun, located in Medicine Hat, Alberta*, and its 1 million square foot facility, Nordic Sky, strategically located in Odense, Denmark. The new purpose-built, "Sky Class" facilities Aurora are constructing will have full control over all anticipated environmental and harvest conditions, resulting in the production of consistently high yielding, high-quality cannabis at low-cost.

Mr. Booth added, "Aurora Sun in Medicine Hat and Aurora Nordic in Denmark represent the next evolution of our "Sky Class" cultivation philosophy and construction of these projects is proceeding well.  Aurora Sun is nearing completion with the majority of capital investment now behind us, while at Aurora Nordic the primary outdoor construction, including the enclosure of the facility, nears completion.  Our design philosophy allows for flexibility in licensing and commissioning in-line with the long-term growth in global demand for medical cannabis."

(Emphasis added.)

43.     The statements referenced in ¶¶ 34 - 41 were materially false and misleading

because Defendants made false and/or misleading statements, as well as failed to disclose material

adverse facts about the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants had exaggerated and/or overestimated the demand for and potential market for its consumer cannabis products; (ii) as a result, Aurora was overproducing consumer use cannabis productS, leading to construction and production inefficiencies as well as the oversupply of products to its non-warehouse and warehouse customers; (iii) Aurora was utilizing an unpermitted, proprietary form of treatment in the production process of its medical Cannabis geared to obtain a longer shelf life of the products, which violates German law mandating that companies receive special permission to distribute medical products exposed to ionizing irradiation; and (iv) all of the foregoing was reasonably likely to have a material negative impact on the Company's financial results.

## V.     THE TRUTH BEGINS TO EMERGE

44.     On November 14, 2019, Aurora announced its first quarter of fiscal 2020 ended September 30, 2019, First Quarter 2020 Results ("Q1 2020 Results") & Corporate Action Plan. The Company reported fiscal first-quarter net income of C$12.8 million, or 1 cent a share, vs. C$105.5 million, or 12 cents a share, in the year-ago period, representing a nearly 90% decline. The Company also reported surprising losses.  Specifically, the Company posted a loss before interest, taxes, depreciation and amortization of C$39.7 million, wider than the C$20.8 million expected by analysts.  Q1 2020 Results further showed a CA$23.8 million, or a 25%, sequential decline of sales, well below analyst estimates.  In particular, Aurora's consumer cannabis revenue fell by 33% sequentially.  In the release, Aurora said that recreational cannabis orders from the provinces — which store companies' product in distribution centers before it gets sent to stores — "slowed considerably" in the summer.  The Company called out the "slow pace" of getting retail cannabis shops licensed and running as one of the reasons.

45.     During Aurora's Q1 2020 Earnings Call on November 14, 2019, Defendant Ibbott

provided further explanation for the substantial decrease in consumer cannabis revenue:

> This decline as we all know was driven by constraints in the distribution
> networks that have caused a temporary decline in ordering of the provincial
> distributors that they allow inventory levels to normalize.  With adequate
> consumer choice now available, we're also seeing consumers exercise that
> choice to select those products that they prefer.
>
> ***We monitor the sell-through rates from the provinces to the retailers very
> carefully*** as we believe that to be a strong indicator that our products are
> meeting the needs of consumers for both quality and pricing.  We are
> pleased that the Aurora family of brands continues to show strength across
> the major provinces for sell through.
>
> (Emphasis added.)

46.     During the same earnings call Defendant Battley disclosed the oversupply on the

market:

> The Aurora story is a great one because we went with a method of growth
> that would not risk – risky.  We derisked the method of growth by having
> these purposeful-built facilities – purpose-built facilities.  And I can't say it
> enough how proud we are of the team that have assembled these.  We're
> becoming the employer of choice.  We're becoming a partner of choice
> globally.  These health departments across the world are calling us first.
> The team that works outside of Canada are nailing it across the board.  I'm
> excited about, ***yes, we had a drop in cannabis sales, but it was anticipated.
> The provinces were oversupplied.  And some of us, producers not us,
> really oversupplied those provinces and hence, the return issue***.  We had
> our allocation plan.  We didn't take the bait.  We maintain our allocation
> amount as per our contract, and that's why we have very few returns, if any,
> of any note.  We got the odd broken box.  But this is a significant difference
> between us and the rest with respect to quality.  And to suggest that we're
> just great producers, that's crazy.  We are great at every vertical that we've
> entered, and we'll continue to execute into every vertical that we enter by
> hiring great people who want to come over to work for us.

47.     Aurora's Corporate Action Plan includes a CA$190 million reduction in capital

expenditures.  As part of its Corporate Action Plan, Aurora announced it was halting

construction on its Aurora Nordic 2 facility in Denmark and it was deferring final construction

on its Aurora Sun facility in Medicine Hat, Alberta – its facilities with the two largest capacities for production.

48.     That same day, Aurora announced an early conversion window for CA$230 million in convertible debt.

49.     Analysts were shocked and dismayed by the Company's disclosures.  For example, in a November 15, 2019 report entitled "Q1: Investor Conviction Around No More Dilution Likely to be Minimal," Jeffries analyst Owen Bennett stated that "lack of investor trust" was "likely to remain a headwind."  The Jeffries report stated, "With possible cash pressures evident, announcing ceased construction at facilities despite a press release just 6 weeks ago praising progression, and now EBITDA (and cash) positive looking unlikely this year, it would be fair for investors not to believe them.  Linked to trust are possible surprises on write-downs." It further suggested that Aurora would likely have to take goodwill impairments associated with its acquisition of MedReleaf.

50.     Following these revelations, the price of Aurora common stock declined.  On November 15, 2019, Aurora's share price fell $0.56 per share, from $3.29 per share on November 14, 2019 to $2.73 per share on November 15, 2019, over 17%, on unusually heaving trading volume.

51.     Then, on November 29, 2019, *Marijuana Business Daily* reported that German pharmacies were recently asked to stop the sale of Aurora's cannabis by German health authorities.  The report stated that products are awaiting inspection by health authorities due to a proprietary step in Aurora's production process.  According to the report, until the review is complete, the products will remain unavailable.  The report stated the production step in question was connected to a method that Aurora uses to protect the shelf life of the flower.  As later

- 14 -

reports noted, "Even if the interruption is short, it could create undesirable consequences for the company, as patients who already use Aurora's product will have to switch to another supplier. If and when Aurora's product sales commence again, patients would need a new prescription, and doctors are known to be reluctant about prescribing products with inconsistent availability, according to Marijuana Business Daily."

52.     Following these revelations, the price of Aurora common stock declined.  On November 29, 2019, Aurora's share price fell $0.17 per share, from $2.61 per share on November 29, 2019 to $2.44 per share on December 2, 2019, approximately 7%.

53.     Then, the Company unleashed another round of unsettling news in late December 2019 over the weekend.  In particular, on Friday, December 20, 2019, Aurora filed an insider transaction disclosure, revealing that Aurora Director Jason Dyck had sold 1,082,500 shares of Aurora at C$3.095, representing about 57% of his holdings.  Shortly thereafter, on Saturday, December 20, 2019, after an internal memo leaked, Aurora issued a press release announcing that Defendant Cam Battley would be stepping down.

54.     Following these revelations, the price of Aurora common stock declined.  On November 29, 2019, Aurora's share price fell $0.24 per share, from $2.25 per share on December 20, 2019 to $2.01 per share on December 23, 2019, more than 10%.

55.     Finally, after market hours on January 6, 2020, the Company disclosed that it has listed its nine-hectare greenhouse in Exeter, Ontario, for sale for $17 million.  Aurora had obtained the greenhouse as part of its $3.2-billion acquisition of MedReleaf Corp. in 2018. Analyst immediately connected the move as "impl[ying] [that] massive writedowns" are coming. Specifically, MKM Partners analyst Bill Kirk said in a January 7, 2019 note to clients, "This listing, for 75% of former MedReleaf's capacity, signals major writedowns ahead."  Kirk further

010871-11/1216079 V1

criticized Defendant for their lack of candor, "We are also discouraged with the visibility of Aurora's strategy - investors were unaware Aurora was trying to sell Exeter," despite a corporate update on December 23, 2019.  Kirk said he expected the Company to record $2 billion worth of write-downs.

56.     Following these revelations, the price of Aurora common stock declined.  On January 6, 2019, Aurora's share price fell $0.19 per share, from $2.02 per share on January 6, 2019 to $1.83 per share on January 7, 2019, nearly 10%.

57.     As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's common shares, Plaintiffs and other Class members have suffered significant losses and damages.

## VI.     PLAINTIFFS'S CLASS ACTION ALLEGATIONS

58.     Plaintiffs brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who acquired Aurora securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of Aurora, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

59.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Aurora securities were actively traded on the NYSE exchange.  While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believes that there are hundreds, if not thousands of members in the proposed Class.

60.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

61.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

62.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

*       whether the Exchange Act was violated by Defendants' acts as alleged herein;

*       whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Aurora;

*       whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

*       whether the Defendants caused Aurora to issue false and misleading filings during the Class Period;

*       whether Defendants acted knowingly or recklessly in issuing false filings;

*       whether the prices of Aurora securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

*       whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

- 17 -

63.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

64.     Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Aurora shares met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- As a public issuer, Aurora filed periodic public reports;

- Aurora regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Aurora's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Aurora was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

65.     Based on the foregoing, the market for Aurora securities promptly digested current information regarding Aurora from all publicly available sources and reflected such information in the prices of the shares, and Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

010871-11/1216079 V1

66.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

67.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

68.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

69.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

70.     Defendants violated § 10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of Aurora securities during the Class Period.

71.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Aurora were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.  These Defendants by virtue of their receipt of information reflecting the true facts of Aurora, their control over, and/or receipt and/or modification of Aurora's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Aurora, participated in the fraudulent scheme alleged herein.

72.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiffs and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Aurora personnel to members of the investing public, including Plaintiffs and the Class.

73.     As a result of the foregoing, the market price of Aurora securities was artificially inflated during the Class Period.  In ignorance of the falsity of Defendants' statements, Plaintiffs and the other members of the Class relied on the statements described above and/or the integrity of the market price of Aurora securities during the Class Period in purchasing Aurora securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

- 20 -

74.     Had Plaintiffs and the other members of the Class been aware that the market price of Aurora securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Aurora securities at the artificially inflated prices that they did, or at all.

75.     As a result of the wrongful conduct alleged herein, Plaintiffs and other members of the Class have suffered damages in an amount to be established at trial.

76.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiffs and the other members of the Class for substantial damages which they suffered in connection with their purchase of Aurora securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

77.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.     During the Class Period, the Individual Defendants participated in the operation and management of Aurora, and conducted and participated, directly and indirectly, in the conduct of Aurora's business affairs.  Because of their senior positions, they knew the adverse non-public information about Aurora's misstatement of revenue and profit and false financial statements.

79.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Aurora's

financial condition and results of operations, and to correct promptly any public statements issued by Aurora which had become materially false or misleading.

80.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Aurora disseminated in the marketplace during the Class Period concerning Aurora's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Aurora to engage in the wrongful acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of Aurora within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Aurora securities.

81.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Aurora.

### VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating Plaintiffs as Lead Plaintiffs and certifying Plaintiffs as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiffs' counsel as Lead Counsel;

(b)     awarding damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)     awarding Plaintiffs and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

- 22 -

(d)      awarding Plaintiffs and other members of the Class such other and further relief

as the Court may deem just and proper.

## VIII.   JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: January 10, 2020                          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By  */s/ Jason A. Zweig*
     JASON A. ZWEIG, JZ-8107

555 Fifth Avenue, Suite 1700
New York, NY  10017
Telephone: (212) 752-5455
Facsimile:  (917) 210-3980
jasonz@hbsslaw.com

Reed R. Kathrein
Lucas E. Gilmore
Danielle Smith
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
danielles@hbsslaw.com

Steve W. Berman (*Pro Hac Vice to be filed*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAW

The individual or institution listed below ("Plaintiff") declares as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed a complaint alleging securities fraud against Aurora Cannabis Inc. (ACB) and various of its officers and directors, and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in this private action or any other litigation under the federal securities law.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth in the Chart attached.

5.      During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

By: _Philip Eaton_ _____
      4C2FA52FD7F1481...
(Signature of Representative Plaintiff and Authorization to File a Complaint)

Date Signed:   Jan 10, 2020 | 6:16 PM PST

Name (print):   Philip Eaton

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAW

The individual or institution listed below ("Plaintiff") declares as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed a complaint alleging securities fraud against Aurora Cannabis Inc. (ACB) and various of its officers and directors, and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in this private action or any other litigation under the federal securities law.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth in the Chart attached.

5.      During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

By: _Kathy Eaton_ _____

DocuSigned by:
4C2FA52FD7F1461...

(Signature of Representative Plaintiff and Authorization to File a Complaint)

Date Signed:   Jan 10, 2020 | 6:17 PM PST

Name (print):   Kathy Eaton

**Loss Analysis for Philip and Kathy Eaton - Aurora Cannabis Inc. (ACB)**

**Class Period 10/23/2018 - 1/06/2020**

| PURCHASES | | | | SALES | | |
|---|---|---|---|---|---|---|
| Date | Shares | Share Price | | Date | Shares | Share Price |
| 03/05/19 | 6,000 | $7.5900 | | 11/18/19 | 10,400 | $2.5300 |
| 03/08/19 | 9,200 | $7.3900 | | 11/18/20 | 11,000 | $2.5300 |
| 03/08/19 | 15,200 | $7.7600 | | | | |
| 03/21/19 | 10,400 | $9.6000 | | | **21,400** | |
| 03/22/19 | 11,000 | $9.0600 | | | | |
| | **51,800** | | | | | |